# **EXHIBIT 2 – Amended Complaint**

Electronically Filed
10/25/2022 2:55 PM
Steven D. Grierson
CLERK OF THE COURT

**ACOM**
David G. Bray (#05230)
dbray@dickinsonwright.com
Gabriel A. Blumberg (#12332)
gblumberg@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV  89169
Phone: (702) 550-4400
Fax: (844) 670-6009
*Attorneys for Plaintiff*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| ANTHONY AMEEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PROFESSIONAL RODEO COWBOYS ASSOCIATION, INC., a Colorado non-profit corporation, and RURAL MEDIA GROUP, INC., d/b/a THE COWBOY CHANNEL, a Delaware corporation,<br><br>Defendants. | Case No.: A-22-858529-C<br>Dept. No.: 17<br><br>**AMENDED COMPLAINT**<br><br>1.  **Action Concerning Amount in Excess of $50,000.** |

NOW COMES, Anthony Ameen, Plaintiff, and alleges as follows:

**PARTIES**

1. Plaintiff Anthony Ameen ("Plaintiff") is a resident of the State of Arizona.

2. Upon information and belief, defendant Professional Rodeo Cowboys Association, Inc. is a Colorado non-profit corporation, with its headquarters at 101 Pro Rodeo Drive, Colorado Springs, Colorado 80919.

3. Upon information and belief, defendant Rural Media Group, Inc. d/b/a The Cowboy Channel ("The Cowboy Channel") is a Delaware limited liability company with its headquarters at 17445 Arbor Street, Suite 300, Omaha, Nebraska 68130.

1

4. Professional Rodeo Cowboys Association, Inc and The Cowboy Channel are sometimes referred to collectively as "Defendants" in this Amended Complaint.

## JURISDICTION AND VENUE

5. This Court is proper venue for this action as the conduct at issue herein occurred in Clark County, Nevada.

6. This Court has jurisdiction over this matter pursuant to Nev. Const. Art. VI, §6, as this Court has original jurisdiction in all cases not assigned to the justices' courts; also, this Court has subject matter jurisdiction over this matter pursuant to NRS 4.37(1), as the amount in controversy exceeds $15,000, exclusive of attorney's fees, interest, and costs.

## BACKGROUND

7. Plaintiff served as a U.S. Navy Hospital Corpsman from 2002 through 2010.

8. Plaintiff earned the nickname "Doc" as he embraced a culture of order and duty.

9. In 2008, Plaintiff was deployed with the 2nd Battalion/7th Marines 1st Marine Division in Helmand Province, Afghanistan, and was critically wounded while running to render medical aid to a severely wounded Marine. The Marine did not make it home alive, nor did Plaintiff's left leg. After 34 surgeries, and almost 3 years of physical therapy, Plaintiff regained walking with the assistance of a prosthetic leg. Plaintiff's battalion lost 21 comrades that were killed in action during the deployment.

10. For his service and sacrifice in Afghanistan, Plaintiff was awarded a Purple Heart and a Navy and Marine Corps Achievement Medal with Combat Valor Distinction.

11. Plaintiff's injury changed the course of the life he envisioned, but Plaintiff eventually chose to view his new path as one that would be watered by the nurtured outflow of the adversity he had faced. His experiences, though challenging at times, allowed Plaintiff to see potential for change and fueled an entrepreneurial spirit within him, which led to his creation of the non-profit Wings for Warriors.

12. Under Plaintiff's leadership, the non-profit organization matured from an idea to a nationally-recognized foundation that advocated for the holistic and spiritual needs of veterans, first responders, and their families. As Founder and CEO, Plaintiff personally counseled more than 5,000 veterans and helped launch Wings for Warriors outlets in 30 different cities across the country serving a total of 6,500 service members.

13. It quickly became clear that the grit, determination, perseverance and leadership capabilities Plaintiff channeled in the military served him well in civilian life as an entrepreneur and a veterans' advocate.

14. Plaintiff later expanded his focus into co-founding and building Taylor & Lawrence, a boutique consulting firm that specialized in serving the Department of Defense (DoD), and healthcare industries by unearthing strategic business partnerships for increased performance and quality patient care.

15. On September 30th, 2021 Plaintiff was invited by Boot Barn to be one of five (5) Purple Heart recipient veteran-honorees at the December 2021 National Finals Rodeo held annually in Las Vegas Nevada.

16. National Finals Rodeo (NFR) is the premier rodeo event conducted by defendant Professional Rodeo Cowboys Association (PRCA). Over ten days every December, the NFR showcases the talents of the PRCA's top 15 money-winners in the season for each event.

17. The NFR is held each year in the first full week of December, at the Thomas & Mack Center on the campus of the University of Nevada, Las Vegas in Paradise, Nevada, and is aired live on The Cowboy Channel.

18. The 2021 NFR was sponsored by Boot Barn. Per Boot Barn's request, Plaintiff emailed his biography and photos for use by Boot Barn and NFR. Plaintiff's biography identified himself as the recipient of the Purple Heart and a Navy and Marine Corps Achievement Medal with Combat Valor Distinction.

3

19. A different veteran was honored each televised evening of the 2021 NFR. Plaintiff was recognized on Round 4 of the Wrangler National Finals Rodeo on December 5, 2021.

20. Prior to being honored, NFR executives toured Plaintiff around the event. Several times during the behind-the-scenes tour, Plaintiff heard himself being introduced to others as a Medal of Honor ("MOH") recipient. Each time that occurred, Plaintiff quickly corrected the NFR representative and let them know that he was awarded the Purple Heart and a Navy and Marine Corps Achievement Medal with Combat Valor Distinction. This was stressed to Plaintiff's tour guide, Tom Feller, and Plaintiff's main point of contact and chauffeur, Lee Kuiper, each time that it occurred.

21. NFR's General Manager Allen Rheinheimer personally introduced Plaintiff as a MOH recipient. At that time, Plaintiff quickly turned to Tom Feller at NFR and whispered in his ear that it was incorrect.

22. Nevertheless, despite having Plaintiff's official, accurate biography, and despite Plaintiff's personal corrections discussed above *prior* to his introduction as a veteran-honoree at the December 5, 2021 NFR, Defendants caused Plaintiff to be identified as a "Medal of Honor Recipient" in a chyron on the Cowboy Channel during the nationally televised Round 4 event. Photographs of the chyrons are attached as Exhibit 1 hereto.

23. The MOH is the United States government's highest and most prestigious military decoration that may be awarded to recognize American soldiers, sailors, Marines, airmen, guardians, and coast guardsmen who have distinguished themselves by acts of valor. The medal is normally awarded by the President of the United States. Since the MOH was created in 1861, there have only been 3,512 individuals who received that honor. Today, there are less than seventy (70) living Medal of Honor recipients.

24. As a general rule, veterans will quickly write off other military members who inflate their service records. A number of Plaintiff's friends and family who saw him on national television were quick to alert Plaintiff that the chyron identifying him as a MOH was misleading.

4

25. Stolen Valor is a federal crime (18 U.S.C. § 704) that can result in a minimum of one year in a federal prison. Misrepresenting oneself as a MOH recipient is specifically prohibited in the Stolen Valor Act of 2013.

26. Anybody with access to the Internet can quickly Google Plaintiff's name to either get details of the valor he displayed to have been awarded the MOH and/or to verify that he had actually been awarded the MOH and was not purposely inflating his military record and/or engaging in Stolen Valor.

27. As a result of Defendants' actions, now when one searches "Anthony Ameen" Google auto-fills the search to "Anthony Ameen medal of honor." Defendants have damaged Plaintiff's reputation as many members of the public now likely presume that he intentionally falsely promoted himself as a MOH recipient and engaged in the crime of Stolen Valor.  In fact, Wings for Warriors did not receive a single donation from any of the 17,000 in-person attendees at NFR each of whom received the December 5 Event Program Booklet that included a spread on Plaintiff and encouraged donations to Wings for Warriors.

28. On or about December 13, 2021, Plaintiff reached out to NFR's General Manager Rheinheimer by phone, text, and email requesting that NFR provide a signed written letter on NFR letterhead explaining that a mistake was made by Defendants alone when it identified Plaintiff as a MOH recipient.  Plaintiff's requests were ignored. To this day, Defendants have refused to provide such a letter or any other kind of retraction.

29. Plaintiff is a veterans' advocate.  Each of his brands correlates with his veteran status and/or the military community.  Plaintiff founded a veterans' non-profit and led a consulting business that are both intimately tied to his status as an Afghanistan combat veteran.

30. It is hard to overstate how damaging Defendants' falsely identifying Plaintiff as a MOH recipient has been to him personally as a veteran, and professionally.

31. Stolen Valor was featured in two front page articles in the Arizona Republic on

5

1  October 24, 2022. In one article, military historian Doug Sterner, who maintains the Hall of Valor,
2  the largest database of verified U.S. military award citations, states that "[s]tolen valor cases are
3  important to investigate because they can be a sign of additional fraud." It is hugely damaging to
4  Plaintiff to be associated both with Stolen Valor and with this associated indicia of other fraud as a
5  result of Defendants' actions. A true and correct copy of the Arizona Republic's "What is Stolen
6  Valor" article is attached as Exhibit 2 hereto.

7  32. Plaintiff's damages are compounded by the reach of the NFR as evidenced by NFR's
8  primetime ratings/attendees on December 5, 2021:

- https://ctv.kwayisi.org/networks/cowboy/ - The Cowboy Channel - 80,000 viewers - (not including On-Demand)
- https://ctv.kwayisi.org/networks/rfd/ - RFD-TV - 86,000 viewers - (not including On-Demand)
- In-Person Attendees at NFR - 17,000

14  33. On February 4, 2022 Plaintiff's counsel sent Defendants a letter requesting, among
15  other things, that Defendants NFR and The Cowboy Channel issue a letter of correction that would
16  serve as retraction of their nationally televised publication that Plaintiff was a MOH recipient.

17  34. To date, Defendants have failed to issue any kind of correction or publish any type of
18  retraction.

19  35. Plaintiff has suffered significant financial losses as well as damages to his reputation
20  and business prospects.

## COUNT I

## DEFAMATION PER SE

23  36. Plaintiff incorporates paragraphs 1-35 above as if fully restated herein.
24  37. As set forth above, Defendants published false statements identifying Plaintiff as a
25  MOH recipient when he was not. Because there are so few living MOH winners (less than 70)

6

anyone seeing that statement and searching for more details as to how Plaintiff earned the highest and rarest of American military honors would readily discover through a Google search or a Wikipedia search that Plaintiff was **not** a MOH recipient. Defendants' publication of this false information thus has a tendency to damage Plaintiff's reputation in his business and profession as a veterans' advocate, motivational speaker, and DoD consultant because the general public and, in particular, active duty and retired military personnel, would presume he lied about his status or engaged in the crime of Stolen Valor in violation of federal law.

38. Defendants' false and defamatory statements regarding Plaintiff's MOH status published on two cable stations that aired on Day 4 of the NFR were viewed by several hundred thousand people and were made with knowledge of the falsity of the statements or in reckless or negligent disregard of its truth or falsity.

39. The publication of these false and defamatory statements by Defendants has damaged Plaintiff's reputation, has caused Plaintiff to suffer emotional distress, and has caused Plaintiff significant economic loss.

40. As Defendants' defamatory and false statements against Plaintiff (i) tended to cause the public to believe that Plaintiff had engaged in the federal crime of Stolen Valor and (ii) related to Plaintiff's business and profession as a veterans' advocate, a consultant to the DoD, and a paid public speaker and held Plaintiff up to hatred, scorn, contempt, and/or ridicule, they constitute defamation *per se*.

## COUNT II

## FALSE LIGHT DEFAMATION

41. Plaintiff incorporates paragraphs 1-40 above as if fully restated herein.

42. As set forth above, Defendants made false statements regarding Plaintiff.

43. The publication of these false and defamatory statements by Defendants as described above has placed Plaintiff in a false and negative light in the public eye.

7

44. Defendants' false and defamatory statements were made with knowledge of the falsity of the statements or in reckless or negligent disregard of their truth or falsity.

45. Defendants' publication of these false and defamatory statements has damaged Plaintiff's reputation, has caused Plaintiff to suffer emotional distress, and has caused Plaintiff significant economic loss.

### REQUEST FOR RELIEF

Plaintiff prays for relief against Defendants as follows:

1. For damages against Defendants in an amount in excess of fifteen thousand dollars ($15,000.00);

2. For punitive and exemplary damages against Defendants in an amount in excess of fifteen thousand dollars ($15,000.00);

3. For an award to Plaintiff of his attorneys' fees, interest and costs; and

4. For such other and further relief as the Court may deem appropriate.

**RESPECTFULLY SUBMITTED** this 25th day of October, 2022.

**DICKINSON WRIGHT PLLC**

By: /s/ David G. Bray
David G. Bray, Esq.
Gabriel A. Blumberg, Esq.
3883 Howard Hughes Parkway, Ste. 800
Las Vegas, NV  89169
*Attorneys for Plaintiff*

4886-8744-1723 v2 [91511-7]

8

**EXHIBIT INDEX TO AMENDED COMPLAINT**

| Exhibit No. | Description | No. of Pages (Exclusive of Exhibit Sheet) |
|---|---|---|
| 1 | Colored photographs of the chyrons | 2 |
| 2 | A true and correct copy of the Arizona Republic's "What is Stolen Valor" article | 4 |

# Exhibit 1

 Aaron Smith



## Aaron Smith

Facebook

You're friends on Facebook

Lives in Nashville, Tennessee

7:39 PM

Caught you on TV at the NFR. Right on!!!





# Exhibit 2

# What is stolen valor? Arizona man's phony exploits inspire law to crack down on it



**Rebekah L. Sanders**
Arizona Republic

A man accused of faking a military record and taking advantage of military families is just the latest claim of an Arizona resident pretending to have served in the armed forces for personal gain.

A number of high-profile "stolen valor" cases have occurred in Arizona over the years, including a Willcox man whose tall tales about being a decorated war hero spurred Congress to pass a law in 2006 against military impersonations.

An Arizona Republic investigation showed Matt Augee, who runs the Phoenix nonprofit RecFX Foundation, repeatedly claimed he served as a soldier and sheriff's deputy. Military and law enforcement have no record of it.

Augee also is accused of duping veterans out of tens of thousands of dollars and taking donations for himself, former supporters said.

Multiple people, including Augee's parents and a member of the Arizona Veterans Hall of Fame, reported him to state and federal authorities, but investigators filed no charges. Augee maintains he did nothing wrong.

## Stolen valor is an insult to 'real heroes'

Doug Sterner, a Vietnam veteran and military historian, researches cases like Augee's and maintains the Hall of Valor, the largest database of verified U.S. military award citations.

He said veterans who slightly embellish "war stories" about real service are typically harmless. Instead, stolen valor generally refers to people who claim time in the military, military medals or acts of bravery on the battlefield that they never participated in or earned at all.

"It devalues the sense of who our real heroes are," Sterner, of Colorado, said.

Stolen valor cases are important to investigate because they can be a sign of additional fraud, he said.

"These are people that lie to gain the confidence of others and then take advantage of them, often with great financial repercussions," Sterner said.

Fibbing about military service may be more common than people realize.

A 2008 investigation by the Chicago Tribune found that one-third of the profiles that mentioned military medals in the online edition of Who's Who, a well-known compendium of biographies, were not supported by military records. The newspaper also discovered more than 80% of obituaries that claimed decorations for bravery were suspect.

And military cemeteries across the country featured headstones engraved with bogus awards.

## Arizona man inspires Stolen Valor Act

Sterner and his wife, Pam Sterner, wrote the book "Restoring Valor" about their successful effort to pass a federal law to crack down on phony veterans.

Their inspiration came from Gilbert Velasquez, a bogus war hero from Willcox, about 90 miles east of Tucson.

Velasquez was featured on the front page of the Arizona Range News weekly for his supposed exploits as an Army Ranger.

He claimed to have captured Saddam Hussein, found two of Hussein's dead sons, chased Taliban fighters in Afghanistan, saved his men by destroying a tank in Iraq and fought in Somalia during the tragic "Black Hawk Down" battle, according to a copy of the article and the Sterners' book.

Velasquez showed reporters photos of him in Iraq, a chunk of marble ostensibly from Hussein's palace and an official-looking military service document known as a DD-214.

Velasquez also carried a case of medals purportedly acquired as a result of his courage, including two Silver Stars, two Bronze Stars and a Purple Heart. He buried his Distinguished Service Cross alongside a fallen commander, he told the newspaper.

Sterner was skeptical when he read the article.

He knew from his research no one at that time had been awarded the Distinguished Service Cross for decades. Other details of the story didn't check out. And Sterner deemed it unlikely that a 33-year-old soldier would have participated in so many notable operations without attracting attention outside his small town.

After Sterner raised doubts with the newspaper, the story was retracted, according to "Restoring Valor." Official military records requested by the reporter revealed Velasquez had never served in the places he claimed, the Sterners wrote.

Motivated by the case, Pam Sterner convinced her husband to help her lobby members of Congress to make it illegal for people to falsely claim they received a U.S. military decoration or medal.

## Illegal to claim prestigious medals for profit

The Stolen Valor Act was signed into law in 2006 by President George W. Bush and was revised in 2013 under President Barack Obama after a Supreme Court challenge.

The law makes it a federal misdemeanor for someone to falsely claim to have received one or more of the following prestigious awards for personal benefit:

> Congressional Medal of Honor.
> Distinguished Service Cross.
> Navy cross.
> Air Force cross.
> Silver star.
> Purple Heart.
> Combat Infantryman's Badge.
> Combat Action Badge.
> Combat Medical Badge.
> Combat Action Ribbon.
> Combat Action Medal.

A conviction can be punishable by fines and up to a year in prison.

The intent to financially benefit is crucial. Simply claiming to have served in the military or to have won a medal, even if untrue, is not a crime.

At least 18 states have enacted legislation criminalizing various forms of military impersonation, according to a review by Mary E. Johnston in the William & Mary Bill of Rights Journal.

Despite cases of stolen valor in Arizona, the state does not have a law against it.

## Fake veterans busted in Arizona

Here's a look at some of the military impersonators reported in Arizona.

> Darrow "Duke" Tully, publisher of The Arizona Republic and the now-defunct Phoenix Gazette, resigned in 1985 after his fake war record was exposed. Tully passed himself off for years as a retired lieutenant colonel and combat fighter pilot in Korea and Vietnam.
>
> Scottsdale resident John William Rodriguez was arrested in 2009 after pretending to be a highly decorated Marine. He wore a uniform with ribbons representing prestigious military honors and received discounts on airline tickets, free housing and leniency in a drunken-driving case by claiming to be in the military, officials said.
>
> Military chaplain Kurt Alan Bishop of Queen Creek was sentenced in 2010 to five years of probation, 120 hours of community service and about $28,000 in restitution for making false claims about his military honors and combat training, which helped him gain higher pay and benefits in the Arizona National Guard.
>
> A Tucson man was arrested in 2011 on suspicion of impersonating a two-star general. Jeffery Lee Bennett wore a U.S. Air Force uniform, carried a fake military ID and stuck a phony Department of Defense vehicle sticker to his car to get past guards at Fort Huachuca and shop tax-free on base, officials said. Bennett pleaded guilty and served less than a year in prison.
>
> Phillip Ohman was charged in Maricopa County and sentenced to prison in 2016 after pretending to be a Navy SEAL to earn the trust of businesses and then writing bad checks. He never served in the military.

*Comments on this story? Email newstips@arizonarepublic.com.*